JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

A.M., A MINOR, BY AND THROUGH :
PARENTS, K.M. AND N.M.,

**(b)** County of Residence of First Listed Plaintiff    Bucks County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael D. Raffaele
Raffaele & Associates, LLC
1230 County Line Road, Bryn Mawr, PA 19010; 610-922-4200

## DEFENDANTS

Pennsbury School District, Thomas A. Smith, in his individual capacity
Laurie Ruffing, in her individual capacity, Elizabeth Aldridge, in her
individual capacity, Reggie Meadows, in his individual capatcity

County of Residence of First Listed Defendant    **Bucks County**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ❏ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ❏ 2  U.S. Government Defendant | ❏ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                       *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | Product Liability | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 368 Asbestos Personal Injury Product Liability | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | **LABOR** | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 720 Labor/Management Relations | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | ❏ 385 Property Damage Product Liability | ❏ 740 Railway Labor Act | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 196 Franchise | | | ❏ 751 Family and Medical Leave Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| | | | | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| ❏ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ❏ 791 Employee Retirement Income Security Act | | ❏ 895 Freedom of Information Act |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ❏ 896 Arbitration |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 950 Constitutionality of State Statutes |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | | ❏ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ❏ 2 Removed from State Court | ❏ 3 Remanded from Appellate Court | ❏ 4 Reinstated or Reopened | ❏ 5 Transferred from Another District *(specify)* | ❏ 6 Multidistrict Litigation - Transfer | | ❏ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983; 42 U.S.C. § 2000d;  20 U.S.C. § 1681
Brief description of cause:
Defendants discriminated against Plaintiff due to his race and sexuality, and denied him constitutional rights.

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes   ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE                                    DOCKET NUMBER

DATE    4/20/2023

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____1000 Lehigh Drive, Yardley PA 19067_____

Address of Defendant: _____134 Yardley Ave, Fallsington PA 19054_____

Place of Accident, Incident or Transaction: _____School District of Pennsbury_____

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?     Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?     Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?     Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __04/20/2023__     _[signature]_     __91615__
               *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**     *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
        *(Please specify): _____*

**B.**     *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify): _____*
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
        *(Please specify): _____*

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Michael D. Raffaele,__ counsel of record *or pro se plaintiff*, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☑ Relief other than monetary damages is sought.

DATE: __04/19/2023__     _[signature]_     __91615__
               *Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5 2018)*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

A.M., A MINOR, BY AND THROUGH :                           CIVIL ACTION
PARENTS, K.M. AND N.M.,                         :
        **v.**                                   :
Pennsbury School District, Thomas A. Smith, in his individual   :
capacity, Laurie Fuffing, in her individual capacity, ElizabethAldridge,
in her individual capacity, Reggie Meadows in his individual capacity      NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.            ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                             ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (X)

| 4/19/2023 | Michael D. Raffaele, Esq. | Plaintiffs |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-922-4200 | 610-646-0888 | michael@mykidslawyer.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **A.M., A MINOR, BY AND THROUGH PARENTS, K.M. AND N.M.,** : | |
| : | |
| *Plaintiff,* : | |
| : | |
| **v.** : | Case No. _____ |
| : | **JURY TRIAL DEMANDED** |
| **PENNSBURY SCHOOL DISTRICT,** : | |
| : | |
| **THOMAS A. SMITH, in his individual capacity,** : | |
| : | |
| **LAURIE RUFFING, in her individual capacity,** : | |
| : | |
| **ELIZABETH ALDRIDGE, in her individual capacity, and** : | |
| : | |
| **REGGIE MEADOWS, in his individual capacity,** : | |
| : | |
| *Defendants.* : | |

## <u>COMPLAINT</u>

1.     Plaintiff, A.M., is a minor child who resides in the Pennsbury School District.  He is entitled to an education in the Pennsbury School District, to due process of law before being deprived of that education, equal protection of the laws, and to be free from discrimination on the basis of his race, sex, gender, and sexual orientation.

2.     Defendants, individually and together, nonetheless deprived Plaintiff of his education, refused him due process of law, denied him equal protection of the laws, and subjected him to discrimination on the basis of his rase, sex, gender, and sexual orientation.

3.       Defendants excluded Plaintiff from school for months—from October 2022 to February 2023—on the basis of allegations of sexual harassment that it knew to be inaccurate at best.  Defendants disregarded the evidence of the falsity of the accusations against Plaintiff because of bigoted beliefs about brown-skinned, gay males.

4.       Plaintiff's Parents were forced to withdraw him from the District and enroll him elsewhere to ensure that he would receive some education for the 2022-2023 school year.

5.       As a result of Defendants' violations of Plaintiff's civil and constitutional rights, Plaintiff has suffered significant personal harms.  His reputation in his community has been all but destroyed.  He has endured ostracization at an age where—as Defendants know—peer relationships are the most important relationships for his social and emotional development.  He suffered the irreparable harm of the denial of months of education.  He has lost sleep, lost weight, and struggled to focus on anything other than the isolation that the Defendants inflicted on him by abusing the power we entrust to school districts and their administrators to amplify the false allegations leveled against him.

## JURISDICTION AND VENUE

6.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  Certain of Plaintiff's claims arise under the Fourteenth Amendment to the United States Constitution, as made applicable to the states by the Fourteenth Amendment, and the laws of the United States, specifically, 42 U.S.C. §§ 1983 and 1988.

7.       The Court also has subject matter jurisdiction over Title IX, 20 U.S.C. § 1681 *et seq.*, and Title VI, pursuant to 28 U.S.C. § 1331.

8.       The Court has supplemental jurisdiction over Plaintiff's claims for violations of his due process and equal protection rights under the Pennsylvania Constitution, which are so

related to the claims that are within the Court's original jurisdiction that they form part of the same case or controversy.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).  A substantial part of the events and omissions complained of herein occurred within the jurisdiction of this Court and, on information and belief, all Defendants reside in this district.

**PARTIES**

10.     Plaintiff, A.M., is a minor child who resides within the bounds of the Pennsbury School District with his parents, K.M. and N.M.  Plaintiff is a Brown, cisgendered gay male who, because of the loving support of his family, never felt a need to hide his gender or sexual orientation.

11.     Defendant Pennsbury School District ("District") is a political subdivision of the Commonwealth of Pennsylvania.  Its administrative offices are located at 134 Yardley Avenue, Fallsington, Pennsylvania, 19054.  As a local agency, the District is a "person" subject to suit within the meaning of 42 U.S.C. § 1983.  It is also a recipient of federal funds under 20 U.S.C. § 1681(a) and an educational institution under 20 U.S.C. § 1681(c).

12.     Defendant Thomas Smith ("Smith") is, and at all relevant times was, the Superintendent of the District.  He was acting under color of state law and was a final policymaker for the District regarding the interpretation and application of its student discipline rules and Title IX compliance.  Plaintiff sues him in his individual capacity.

13.     Defendant Laurie Ruffing ("Ruffing") is, and at all relevant times was, the Acting Director of Pupil Services and Title IX Coordinator for the District.  She was acting under color of state law and was a final policymaker for the District regarding the interpretation and

application of its student discipline rules and Title IX compliance.  Plaintiff sues her in her individual capacity.

14.     Defendant Elizabeth Aldridge ("Aldridge") is, and at all relevant times was, the Administrator on Special Assignment for the District and the District's agent who championed the accusations against Plaintiff.  She was acting under color of state law and was a final policymaker for the District regarding the interpretation and application of its student discipline rules and Title IX compliance.  Plaintiff sues her in her individual capacity.

15.     Defendant Reggie Meadows ("Meadows") is, and at all relevant times was, the Building Principal for A.M.'s school within the District.  He was acting under color of state law and was a final policymaker for the District regarding the application of its student discipline rules, and was a policymaker for the District.  Plaintiff sues him in his individual capacity.

## PERTINENT FACTS

16.     Plaintiff has been a student in the District since second grade.  During that time, he has distinguished himself both as a student and in performance art, particularly theatre.

17.     Up until October 2022, Plaintiff had a close-knit friend group made up primarily of students who were also involved in performance arts in the Pennsbury School District.

18.     Plaintiff and his friends (first as middle schoolers, then as high schoolers, and throughout as adolescents) frequently traded sexually explicit jokes, engaged in suggestive horseplay, and made comments about each others' appearance in person, via direct and group messages, and on social media.

19.     Because they have come into adolescence at a time when societal discussions have emphasized bodily autonomy and more expansive concepts of gender, though, Plaintiff and

his friend group have also been direct and open with one another about their respective physical boundaries and comfort levels with comments, physical proximity, and physical contact.

20.     When there was a breach of those boundaries—as there inevitably are in just about any group of adolescents finding their way socially and emotionally—Plaintiff and his friends would talk about the transgression and, usually, the offender would offer an apology.  It was an age-appropriate approach to dispute resolution.

21.     Plaintiff routinely abided by his friends' boundaries.  And when he learned that he had made someone uncomfortable by taking a joke too far or crossing a previously-unarticulated boundary, he would apologize.

22.     On information and belief, shortly before 15 October 2022, minor children known to Plaintiff and Defendants by name but here identified as "Student 1" and "Student 2" decided that they would prefer that Plaintiff no longer be part of their friend group.  Both Student 1 and Student 2 are White.

23.     Students 1 and 2 encouraged members of their and Plaintiff's shared friend group to submit sexual harassment complaints against Plaintiff for making sexually explicit jokes and engaging in suggestive horseplay that had previously been within the accepted bounds of their relationships.  Their goal was to humiliate and ostracize Plaintiff.

24.     Four other students, known to Plaintiff and Defendants by name but here identified as Students 3-6, joined Students 1 and 2.  Students 3-6, like Students 1 and 2, are known to Plaintiff and Defendants by name.  They are also all White.

25.     On 17 October 2022, Students 1-6 submitted statements to the District alleging that Plaintiff had sexually assaulted and/or harassed them.

26.     Their allegations combined both outright fabrications and complaints about conduct to which Students 1-6 had previously consented and considered acceptable.

27.     While Students 1-6 alleged on 17 October 2022 that Plaintiff had sexually harassed and/or assaulted them repeatedly over the course of years, that day marked the first time that anyone had ever made any such complaint about Plaintiff.

28.     The allegations by Students 1-6 included the assertion that Plaintiff had groped a student's breasts and buttocks in school during class on 13 October 2022.

29.     The District's own staff members stated that they had seen no such incident.

30.     The District's own staff members also pointed out to the District that this was the first time *any* of them had heard of *any* allegations of sexual harassment by Plaintiff.

31.     The District nonetheless took up Student 1-6's torch and ran with it further than they could have hoped to go on their own.

32.     On 17 October 2022, Defendants removed Plaintiff from his gym class with peers and told him to pack up his things. Once Defendants had done so, they had Plaintiff escorted to a private room in the main office.  Defendants provided Plaintiff with no explanation for this treatment.  Instead, one of Defendants' agents told Plaintiff only that there was an investigation, that police were involved, and that Plaintiff needed to arrange his own transport home.

33.     Defendants placed Plaintiff on what was initially a three-day suspension.

34.     Defendants, for the last time that they would respect Plaintiff's rights to due process and equal protection of the laws during the 2022-2023 school year, then accorded Plaintiff his informal hearing.  Defendants were required to provide him with that hearing under 22 Pa. Code §§ 12.6 and 12.8.

35.     Under those same sections of the Pennsylvania School Code, Defendants were also required to provide Plaintiff with a formal hearing prior to excluding him from school for more than ten consecutive days, or 15 consecutive days if the District concluded that Plaintiff was a threat to the health and safety of others.

36.     Following the informal hearing, Defendant Meadows, who was present for the informal hearing, recommended that Defendants pursue Plaintiff's potential expulsion. Defendant Smith approved that recommendation.

37.     On information and belief, Defendants were aware that Plaintiff has a due process right to confront Students 1-6 and question each of them at an expulsion hearing.

38.     Defendants decided to refuse Plaintiff his due process rights and equal protection of the laws.

39.     Defendants made no effort to schedule a formal hearing as required by § 12.8.

40.     Defendants refused to provide Plaintiff and his parents with the notice of due process rights required by § 12.8.

41.     Instead, on 25 October 2022, Defendants expelled Plaintiff without due process of law by excluding him from school indefinitely.  While Defendants cited Title IX's "emergency removal" regulations to justify this removal, they engaged in no individualized safety or risk analysis of Plaintiff, found no immediate threat to another student's health or safety, provided no notice to Plaintiff that he could challenge that determination, gave Plaintiff no opportunity to challenge that determination, and presumed Plaintiff's guilt as the basis for his removal.

42.     To support this unlawful expulsion of Plaintiff, Defendant Ruffing filed a formal Title IX Complaint against him that same day.  On information and belief, she did so in consultation with Defendants Smith, Aldridge, and Meadows.

43.     Defendants notified Plaintiff that same day not to engage in retaliation against Students 1-6.  It purportedly sent the same admonition to Students 1-6 on that day.

44.     That same day, Defendants assigned Defendant Aldridge, who is White and, on information and belief, a cisgendered, heterosexual woman, to the task of gathering and amplifying Student 1-6's accusations.

45.     Despite learning early in Defendant Aldridge's accusation-gathering that Plaintiff's statements and behaviors as part of his friend group's interactions (which now made up a portion of Student 1-6's allegations) had been unobjectionable, and that the coordinated accusations against Plaintiff were, as one student put it, "drama drama," the District predetermined that Plaintiff was a threat to others' safety.  On information and belief, Defendants Smith, Ruffing, and Meadows opined that Plaintiff was a danger to other students.

46.     Defendants informed Plaintiff that because they had deemed him a threat, he could not return to school until Defendants completed their Title IX investigation.

47.     As soon as they had put Plaintiff out of school, Defendants then slowed down their pace significantly.

48.     Defendants waited till 31 October 2022 to notify Students 1-6 that Defendant Aldridge was going to be collecting their accusations in a more formal manner.

49.     That, incidentally, was the tenth day of Plaintiff's exclusion from his regular educational placement and the deadline for Defendants to hold a formal expulsion hearing under 22 Pa. Code § 12.8 to justify any further exclusion from school.

50.     It did not hold a formal hearing on 31 October 2022.

51.     Defendant Aldridge, with the approval of her co-Defendants, then waited two more weeks to actually begin speaking with the students whom Defendants designated as complainants and witnesses.

52.     Defendants let three more weeks lapse before interviewing Plaintiff.

53.     In that time, Students 1-6 engaged in harassment of Plaintiff in violation of the District's Title IX policies and Student Code of Conduct by spreading rumors and, on information and belief, messages via social media that resulted in multiple of Plaintiff's peers posting false and defamatory messages on social media.

54.     Plaintiff and his parents submitted a Title IX grievance to Defendants in response to that harassment.

55.     Defendants did not investigate any investigations or disciplinary proceedings against Students 1-6 for their violations of the District's anti-retaliation and anti-harassment policies.

56.     Plaintiff participated in his interview and answered all of Defendant Aldridge's questions on 5 December 2022.  That was the first day that Defendants had allowed Plaintiff back on school property since his informal hearing on 21 October 2022.

57.     Defendants immediately barred him from school again following the interview. They again refused to schedule a formal expulsion hearing.

58.     Defendants waited five and a half more weeks, all while continuing to bar Plaintiff from his school, before issuing Defendant Aldridge's collection of the accusations against Plaintiff on 13 January 2023.

59.     During that time, Plaintiff, uniquely among all of the students whom Defendant Aldridge interviewed, provided documentary evidence corroborating his interview statements.

60.     In the document that she issued on 13 January 2023 after consultation with her co-Defendants, Defendant Aldridge took pains to discredit Plaintiff, uniquely among all of the students she interviewed, and his evidence.

61.     Defendant Aldridge's decision to discredit Plaintiff while crediting Students 1-6 was notably inconsistent in its application of her purported bases for making credibility determinations.

62.     To disregard the information she received from Plaintiff, Defendant Aldridge necessarily had to reject Plaintiff's documentary evidence.  She did so by saying that while Plaintiff's evidence *did* show a pattern of behavior between Plaintiff and his now-former friend group of engaging in sexual humor, a pattern of behavior does *not* bear on the question of whether Students 1-6's interactions with Plaintiff in specific instances were consensual.

63.     By contrast, when reaching her decision to reject Plaintiff's claims that what Students 1-6 were now alleging to be nonconsensual activities were, in fact, consensual, and particularly that the false allegations that he had groped other students were false, Defendant Aldridge emphasized her belief that Plaintiff's denials were not credible because what she considered to be Plaintiff's pattern of behavior.

64.     Defendant Aldridge's belief that Plaintiff engaged in a "pattern of behavior" was based on three things.  The first was her acceptance of the allegations against Plaintiff by Students 1-6 were true, which means that Defendant Aldridge's credibility determinations were based on the presupposition of Plaintiff's guilt.

65.     The second was Defendant Aldridge's opinion that Plaintiff's being an openly gay male who was unafraid to joke about being a gay male "demonstrates a significant lack of boundaries[,] especially in the area of sexual contact in the school setting."

66.     The third was Defendant Aldridge's opinion that Plaintiff, as a brown-skinned person, is inherently more dangerous than herself and Students 1-6, all of whom are White.

67.     Upon receiving Defendant Aldridge's collection of the allegations against Plaintiff, Plaintiff and his parents provided *additional* documentary evidence refuting the allegations by Students 1-6, focusing in particular on the fact that Students 1-6's claims that they had not consented to sexual jokes and horseplay with Plaintiff in specific instances were false.

68.     In addition, given the bias against Plaintiff as a Brown, openly gay male that was patent on the face of Defendant Aldridge's 13 January 2023 document, Plaintiff and Parents filed a Title IX grievance against Defendant Aldridge with Defendant District.

69.     Defendants, while continuing to exclude Plaintiff from his school, waited five days to even respond.

70.     On  18 January 2023, Defendant Ruffing emailed Plaintiff's parents to state only that "[y]ou can expect more information shortly."

71.     Defendants, while continuing to exclude Plaintiff from school, then waited nine more days.

72.     On 27 January 2023, Defendants deemed Plaintiff's Title IX grievance against Defendant Aldridge to be an appeal of Defendants' *as yet incomplete* investigation against Plaintiff.  Defendants informed Plaintiff that their grievance against Defendant Aldridge would not proceed until the District had, on its own time, entered a final determination against Plaintiff.

73.     Defendants never initiated any proceedings based on Plaintiff's Title IX grievance against Defendant Aldridge, who is, on information and belief, a cisgendered heterosexual woman.

74. On 6 February 2023, Defendants, through their counsel, notified Plaintiff that Defendants would be issuing a determination based on Defendant Aldridge's homophobia-fueled conclusions against Plaintiff "shortly" and that in the event Defendants concluded that he could return to school, Defendants would be imposing on Plaintiff a personal chaperone.

75. The job of this full-time, taxpayer-funded employee would be to follow Plaintiff everywhere while Plaintiff was on District property and scrutinize his behavior.

76. By this time, 112 days had elapsed from when Defendants had first put Plaintiff out of school on an "emergency," indefinite basis.

77. During that time, Plaintiff had endured not only the loss of his friend group and ostracization by peers at school, but the indignity of his former friends defaming and harassing him online.

78. Plaintiff had learned in those 112 days of being barred from his school that Defendants—and particularly Defendant Aldridge—considered him inherently dangerous and untrustworthy because he is a brown-skinned, openly gay male.

79. Plaintiff had watched for nearly half the school year as Defendants chose to allow retaliatory defamation, bullying, and harassment by Students 1-6, all of whom are White, in violation of Defendants' Title IX policies and Student Code of Conduct.

80. Plaintiff had endured Defendants' ongoing refusal to accord him his due process right to a formal expulsion hearing before being excluded from school for more than 15 consecutive school days.

81. Plaintiff had watched as Defendants responded to his request for Title IX investigation of the naked racism and homophobia exhibited by Defendant Aldridge, a straight White woman, by brushing it aside.

82.     Plaintiff has, as a result of Defendants' discrimination against him, refusal to accord him due process of law, and selective enforcement of applicable laws, regulations, and policies, suffered an irreparable loss of education, the destruction of his reputation in the community, feelings of isolation and abandonment, and protracted emotional distress and mental anguish that have manifested as loss of sleep, loss of appetite, a racing heart, feelings of despair and panic, an inability to focus on anything other than what he has lost, and intrusive thoughts of self-harm and passive suicidal ideation.

83.     Plaintiff's parents made the decision that Plaintiff could not return to the District's schools given that the District was intent on rendering the school environment hostile to him. They chose to enroll Plaintiff with another local education agency.

84.     Defendant responded by declaring its purported Title IX investigation of Plaintiff in abeyance.  It refused to issue a final decision—thereby refusing also to initiate even the "appeal" of Defendant Aldridge's homophobic discrimination towards Plaintiff—while leaving the specter of an adverse finding hanging over Plaintiff should he ever try to return to the District.

85.     In contrast to its ongoing hypervigilance directed at Plaintiff, Defendant has continued to sit idly by as Students 1-6 have carried on defaming and harassing Plaintiff.

86.     For these reasons, and the reasons set forth below, Plaintiff now brings this case to rectify Defendants' harms.

### COUNT I: DISCRIMINATION ON THE BASIS OF
### SEX, GENDER, AND SEXUAL ORIENTATION IN VIOLATION OF TITLE IX
### (against Defendant District)

87.     Plaintiff incorporates the allegations contained in Paragraphs 1-86, above, as if set forth fully herein.

88.     Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . .." 20 U.S.C. § 1681(a).

89.     Discrimination against a person on the basis of homosexuality is discrimination on the basis of sex. *See Bostock v. Clayton County*, 140 S. Ct. 1731 (2020); *D.V. by and through B.V. v. Pennsauken Sch. Dist.*, 247 F. Supp. 3d 464, 476 (D.N.J. 2017).

90.     Defendant District discriminated against Plaintiff on the basis of his sex, gender, and sexual orientation both in its conduct of a Title IX investigation directed at him and in its refusals to conduct Title IX investigations based on his grievances.

91.     Defendant District first discriminated against Plaintiff in violation of Title IX by conducting a purported Title IX investigation against him that was tainted by the anti-gay bigotry of its agent, Defendant Aldridge.

92.     Defendant rendered findings of fact and credibility determinations that were based on negative stereotypes of gay males, including the insidious belief that gay males are inherently sexually voracious and violent.

93.     Defendant District, through Defendant Aldridge, chose to treat the sexual jokes and horseplay of the heterosexual girls among Students 1-6 as normal, natural, defensible, and not evidence of an immutable pattern of behavior while treating the sexual jokes and horseplay of Plaintiff, a gay male, as abnormal, unnatural, inherently harmful, and evidence of an immutable pattern of behavior.

94.     Defendant District further discriminated against Plaintiff by treating him, a cisgendered homosexual male, differently and worse than it treated Students 1, 3, 4, 5, and 6, and Defendant Aldridge, all of whom are cisgendered heterosexual females.

95.     Students 1, 3, 4, 5, and 6 repeatedly spread false and defamatory information about Plaintiff after 17 October 2022, in violation of the District's Title IX anti-retaliation admonition and its Code of Conduct.

96.     Defendant District, however, took no action against Students 1, 3, 4, 5, and 6 for these violations of its policies.

97.     It took no action because it, like its co-defendants, believes that heterosexual females are more entitled to legal protection than homosexual males.

98.     Defendant Aldridge turned what was supposed to be a neutral fact-finding effort into a vehicle for dehumanizing Plaintiff based on anti-gay biases.  Plaintiff accordingly submitted a Title IX grievance against her for discrimination on the basis of sex.

99.     Defendant District took no action against Defendant Aldridge in response to Plaintiff's Title IX grievance.

100.    It took no action because it, like its co-defendants, believes that heterosexual females are more entitled to legal protection than homosexual males.

101.    Defendant District's discrimination against Plaintiff was intentional.  Plaintiff and his parents made sure the District was on notice of the mistreatment that Plaintiff was suffering on the basis of his sex, gender, and sexual orientation, and Defendant District, together with and through its co-defendants, chose to continue discriminating against Plaintiff, even going so far as to invoke Title IX's "emergency removal" power but offering Plaintiff none of the due process guarantees that come with an emergency removal.

102.    Plaintiff has, as a result of Defendants' discrimination against him, suffered an irreparable loss of education, the destruction of his reputation in the community, feelings of isolation and abandonment, and protracted emotional distress and mental anguish that have manifested as loss of sleep, loss of appetite, a racing heart, feelings of despair and panic, an inability to focus on anything other than what he has lost, and intrusive thoughts of self-harm and passive suicidal ideation.

**WHEREFORE,** Plaintiff requests the following relief:

a.    Declare that the District discriminated against him on the basis of sex in violation of Title IX;

b.    Award compensatory damages in excess of $150,000 for the loss of education, reputational harm, and pecuniary harms to Plaintiff arising from Defendant District's discrimination against him on the basis of his sex;

c.    Order the District to expunge its factual findings against Plaintiff from its records;

d.    Award Plaintiff reasonable attorney's fees and costs; and

e.    Grant such other relief as the Court deems necessary and just.

### COUNT II: DISCRIMINATION ON THE BASIS OF RACE, COLOR, OR NATIONAL ORIGIN IN VIOLATION OF TITLE VI
### (against Defendant District)

103.    Plaintiff incorporates the allegations contained in Paragraphs 1-102, above, as if set forth fully herein.

104.    Title VI provides that "[n]o person in the United States shall, on the basis of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

16

105.     Defendant District discriminated against Plaintiff on the basis of his race and color both in its conduct of a Title IX investigation directed at him and in its refusals to conduct Title IX investigations based on his grievances.

106.     Defendant District first discriminated against Plaintiff in violation of Title VI by conducting a purported Title IX investigation against him that was tainted by the racism of its agent, Defendant Aldridge.

107.     Defendant rendered findings of fact and credibility determinations that were based on negative stereotypes of Brown males, including the insidious belief that Brown males are inherently sexually voracious and violent.

108.     Defendant District, through Defendant Aldridge, chose to treat the sexual jokes and horseplay of the heterosexual White girls among Students 1-6 as normal, natural, defensible, and not evidence of an immutable pattern of behavior while treating the sexual jokes and horseplay of Plaintiff, a Brown gay male, as abnormal, unnatural, inherently harmful, and evidence of an immutable pattern of behavior.

109.     Defendant District further discriminated against Plaintiff by treating him, a Brown, cisgendered homosexual male, differently and worse than it treated Students 1, 3, 4, 5, and 6, and Defendant Aldridge, all of whom are White, cisgendered heterosexual females.

110.     Students 1, 3, 4, 5, and 6 repeatedly disseminated false and defamatory materials about Plaintiff after 17 October 2022, in violation of the District's Title IX anti-retaliation admonition and its Code of Conduct.

111.     Defendant District, however, took no action against Students 1, 3, 4, 5, and 6 for these violations of its policies.

112.    It took no action because it, like its co-defendants, believes that White females are more entitled to legal protection than brown-skinned males.

113.    Defendant Aldridge turned what was supposed to be a neutral fact-finding effort into a vehicle for dehumanizing Plaintiff based on racist and anti-gay biases.  Plaintiff accordingly submitted a Title IX grievance against her for discrimination.

114.    Defendant District took no action against Defendant Aldridge in response to Plaintiff's Title IX grievance.

115.    It took no action because it, like its co-defendants, believes that White, heterosexual females are more entitled to legal protection than brown-skinned, homosexual males.

116.    Defendant District's discrimination against Plaintiff was intentional.  Plaintiff and his parents made sure the District was on notice of the mistreatment that Plaintiff was suffering on the basis of his race and color, and Defendant District, together with and through its co-defendants, chose to continue discriminating against Plaintiff.

117.    Plaintiff has, as a result of Defendants' discrimination against him, suffered an irreparable loss of education, the destruction of his reputation in the community, feelings of isolation and abandonment, and protracted emotional distress and mental anguish that have manifested as loss of sleep, loss of appetite, a racing heart, feelings of despair and panic, an inability to focus on anything other than what he has lost, and intrusive thoughts of self-harm and passive suicidal ideation.

**WHEREFORE,** Plaintiff requests the following relief:

a.    Declare that the District discriminated against him on the basis of sex in violation of Title VI;

b.     Award compensatory damages in excess of $150,000 for the loss of education, reputational harm, and pecuniary harms to Plaintiff arising from Defendant District's discrimination against him on the basis of his race and color;

c.     Order the District to expunge its factual findings against Plaintiff from its records;

d.     Award Plaintiff reasonable attorney's fees and costs; and

e.     Grant such other relief as the Court deems necessary and just.

## COUNT III: VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT
### (against Defendant District)

118.   Plaintiff incorporates the allegations contained in paragraphs 1-117, above, as if set forth fully herein.

119.   Plaintiff, a gay male, was unlawfully excluded from school for nearly four months without due process of law and subjected to the inequitable application of Title IX by Defendant District.

120.   Defendant District treated Plaitiff so because it, together with and through its co-Defendants, deliberately chose to treat Plaintiff as less worthy of his due process rights and the protections accorded by Title IX than his White, heterosexual, female peers and Defendant Aldridge, a White, heterosexual woman.

121.   Defendant District chose to deny Plaintiff equal process and treatment under applicable laws, regulations, and policies because it believed his being a brown-skinned gay male made him inherently sexually dangerous to others.

122.   Defendant District thereby deprived Plaintiff of the equal protection of the laws in violation of section 1 of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiff requests the following relief:

a.    Enjoin Defendant District from depriving Plaintiff and other, similarly-situated brown-skinned, gay male individuals from equal access to and equal treatment by Defendant District and its agents;

b.    Direct Defendant District to revise its policies, customs, and practices to conform them to the requirements of the Fourteenth Amendment;

c.    Direct Defendant District to conduct the required Title IX grievances concerning Students 1-6 and Defendant Aldridge;

d.    Award Plaintiff compensatory damages in an amount to be determined at trial and pursuant to 42 U.S.C. § 1983 for the emotional distress, mental anguish, and reputational harm he suffered as a result of Defendant District's knowing and willful deprivation of his right to equal protection of the laws;

e.    Award Plaintiff reasonable attorney's fees; and

f.    Grant such other relief as the Court deems necessary and just.

## COUNT IV: VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT
### (against Defendants Smith, Ruffing, Aldridge, and Meadows)

123.    Plaintiff incorporates the allegations contained in paragraphs 1-122, above, as if set forth fully herein.

124.    Defendants, acting under color of state law, denied Plaintiff the process he was due prior to being excluded from school for more than 15 consecutive school days and subjected him to discrimination on the basis of his sex.

125.    Defendants were well aware that Plaintiff was entitled to a formal expulsion hearing, notice of his rights at that hearing, and to the equal and unbiased application of the District's Title IX investigation and sanction processes and its Code of Conduct.

126.    Defendants obligations to provide Plaintiff with due process and nondiscriminatory treatment were clear and well-established.

127.    Defendants nonetheless treated Plaintiff differently and worse than his White, heterosexual female peers and Defendant Aldridge based on their bigoted belief that he, as a

brown-skinned person and gay male, was inherently sexually dangerous and therefore less entitled to due process and the protections of Title IX.

128.    Defendants thereby deprived Plaintiff of the equal protection of the laws in violation of section 1 of the Fourteenth Amendment to the United States Constitution, and, as set forth above, did so deliberately, even going so far as to invoke Title IX's "emergency removal" power for the purpose of removing Plaintiff from school but promptly failing to implement any of the attendant due process guarantees to allow Plaintiff to promptly challenge that removal.

**WHEREFORE,** Plaintiff requests the following relief:

a.      Award compensatory damages to Plaintiff for the emotional distress, mental anguish, and reputational harms he suffered as a result of the individual Defendants' knowing and willful deprivation of his right to equal protection of the laws on the basis of disability in an amount to be proven at trial;

b.      Award punitive damages to Plaintiff against each individual defendant in an amount sufficient to deter them from pursuing similar unconstitutional and unlawful actions in the future;

c.      Award of reasonable attorney's fees; and

d.      Grant such other relief as the Court deems necessary and just.

**COUNT V: DENIAL OF DUE PROCESS**
**IN VIOLATION OF THE FOURTEENTH AMENDMENT**
**(against Defendant District)**

129.    Plaintiff incorporates the allegations contained in paragraphs 1-128, above, as if set forth fully herein.

130.    As Defendant District knew at the time it chose to deny Plaintiff his due process rights, the Fourteenth Amendment provides a person may not be deprived of life, liberty, or property without due process of law.

131.    Under 22 Pa. Code § 12.8, "[e]ducation is a statutory right, and students shall be afforded due process if they are to be excluded from school.  In a case involving a possible expulsion, the student is entitled to a formal hearing."

132.    Moreover, "the proceeding shall be held within 15 school days of the notification of charges, unless mutually agreed to by both parties." *See* 22 Pa. Code § 12.8(b)(2).

133.    Under 22 Pa. Code § 12.6, expulsion is an exclusion for a period exceeding ten school days.  Furthermore, "[a] student may not be excluded from school for longer than 15 school days without a formal hearing unless mutually agreed upon by both parties." 22 Pa. Code § 12.6(d).

134.    Defendant District's obligation to provide Plaintiff with a formal expulsion hearing within 15 school days of 17 October 2022 was clear and unambiguous.  So, too, was Defendant District's obligation under Title IX to justify its "emergency" removal of Plaintiff by conducting an "individualized safety and risk analysis" and "provid[ing] the respondent with notice and an opportunity to challenge the decision immediately following the removal." 34 C.F.R. § 106.44.

135.    Defendant District's obligation to return Plaintiff to school no later than 7 November 2022 in the absence of a formal expulsion hearing was clear and unambiguous.  So, too, was its obligation to provide Plaintiff with an opportunity to challenge his emergency removal "immediately."

136.    Defendant District excluded Plaintiff from school without a formal expulsion hearing from 17 October 2022 until mid-February, 2023, in violation of its clear obligation to provide him due process of law.  It thereby deprived him of due process of law in violation of the Fourteenth Amendment.

**WHEREFORE**, Plaintiff requests the following relief:

a.   Enjoin Defendant District from denying Plaintiff and other, similarly-situated gay male individuals of due process;

b.   Direct Defendant District to revise its policies, customs, and practices to conform them to the requirements of the Fourteenth Amendment;

c.   Award Plaintiff compensatory damages in an amount to be determined at trial and pursuant to 42 U.S.C. § 1983 for the emotional distress, mental anguish, and reputational harm he suffered as a result of Defendant District's knowing and willful deprivation of his right to equal protection of the laws;

d.   Award Plaintiff reasonable attorney's fees; and

e.   Grant such other relief as the Court deems necessary and just.

## COUNT VI: DENIAL OF DUE PROCESS
## IN VIOLATION OF THE FOURTEENTH AMENDMENT
### (against Defendants Smith, Ruffing, Aldridge, and Meadows)

137.   Plaintiff incorporates the allegations contained in paragraphs 1-136, above, as if set forth fully herein.

138.   As the individual Defendants knew at the time they chose to deny Plaintiff his due process rights, the Fourteenth Amendment provides a person may not be deprived of life, liberty, or property without due process of law.

139.   Under 22 Pa. Code § 12.8, "[e]ducation is a statutory right, and students shall be afforded due process if they are to be excluded from school.  In a case involving a possible expulsion, the student is entitled to a formal hearing."

140.   Moreover, "the proceeding shall be held within 15 school days of the notification of charges, unless mutually agreed to by both parties."  *See* 22 Pa. Code § 12.8(b)(2).

141.   Under 22 Pa. Code § 12.6, expulsion is an exclusion for a period exceeding ten school days.  Furthermore, "[a] student may not be excluded from school for longer than 15

23

school days without a formal hearing unless mutually agreed upon by both parties." 22 Pa. Code § 12.6(d).

142.    Defendants' obligations to provide Plaintiff with a formal expulsion hearing within 15 school days of 17 October 2022 was clear and unambiguous.  So, too, was Defendants' obligation under Title IX to justify their "emergency" removal of Plaintiff by conducting an "individualized safety and risk analysis" and "provid[ing] the respondent with notice and an opportunity to challenge the decision immediately following the removal." 34 C.F.R. § 106.44.

143.    Defendants' obligations to return Plaintiff to school no later than 7 November 2022 in the absence of a formal expulsion hearing was clear and unambiguous.  So, too, was their obligation to provide Plaintiff with an opportunity to challenge his emergency removal "immediately."

144.    Defendants nonetheless excluded Plaintiff from school without a formal expulsion hearing from 17 October 2022 until mid-February, 2023, in violation of its clear obligation to provide him due process of law.  They thereby deprived him of due process of law in violation of the Fourteenth Amendment, and did so deliberately.

**WHEREFORE,** Plaintiff requests the following relief:

a.    Award compensatory damages to Plaintiff for the emotional distress, mental anguish, and reputational harms he suffered as a result of the individual Defendants' knowing and willful deprivation of his right to equal protection of the laws on the basis of disability in an amount to be proven at trial;

b.    Award punitive damages to Plaintiff against each individual defendant in an amount sufficient to deter them from pursuing similar unconstitutional and unlawful actions in the future;

c.    Award of reasonable attorney's fees; and

d.    Grant such other relief as the Court deems necessary and just.

## COUNT VII: VIOLATION OF THE PENNSYLVANIA CONSTITUTION
### (against Defendant District)

145.    Plaintiff incorporates the allegations contained in paragraphs 1-144, above, as if set forth fully herein.

146.    Article I, section 1 of the Pennsylvania Constitution states that all persons in the Commonwealth have inherent and indefeasible rights to life, liberty, property, and privacy. Residents of the Commonwealth may not be deprived of these rights without being afforded due process of law.

147.    Under Pennsylvania law, all persons between the ages of 6 and 21 residing in the Commonwealth are entitled to a free and full education in the Commonwealth's public schools.

148.    Before excluding a student from school for more than ten consecutive school days or, under limited circumstances, fifteen, a Pennsylvania local education agency must give the student notice of the charges against him, advise him of his rights to counsel, testimony, silence, and to confront witnesses, and then hold a formal hearing concerning the exclusion.

149.    That formal hearing must occur no more than 15 school days from the date that notice of the charges was given.

150.    This hearing must be held by (a) the School Board, (b) a committee of School Board members, or (c) a qualified hearing examiner appointed by the School Board.

151.    Under Pennsylvania's Local Agency Law, a final order, decree, decision, determination, or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities, or obligations of any or all of the parties to the proceeding is an adjudication.  Moreover, such an adjudication is valid only if the parties have been afforded reasonable notice, a hearing, and an opportunity to be heard, and the result is delivered in writing, contains findings, and is served on all parties.

152.     Defendant District notified Plaintiff of the charges against him on 17 October 2022.  It afforded him no formal hearing.  It refused to return him to school after ten days, and then after 15 consecutive school days.  At no time did Defendant District offer Plaintiff any opportunity to challenge his months-long exclusion from school.

153.     Defendant District thus failed to hold a timely expulsion hearing, and thereby deprived Plaintiff of his right to due process under, and the equal protection of, the Pennsylvania Constitution, Pennsylvania local Agency Law, the Pennsylvania Code, and the District's own policies.

**WHEREFORE**, Plaintiff requests the following relief:

a.     A judgment against the District declaring that Defendant District violated the rights of Plaintiff as set forth in this Complaint;

b.     Expungement of Plaintiff's disciplinary record; and

c.     Such other relief as the Court deems necessary and just.

Date:   20 April 2023

Respectfully submitted,

*/s/Michael D. Raffaele*
Michael D. Raffaele (PA ID 91615)
Raffaele & Associates, LLC
1230 County Line Road
Bryn Mawr, PA 19010
(610) 922-4200
(610) 646-0888 [fax]
Michael@MyKidsLawyer.com

*Counsel for Plaintiff*