**JACKSON LEWIS P.C.**
Renee N. Smith (PA # 65866)
Morgan D. Schwartz (PA # 328938)
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
T: (267) 319-7802/F: (215) 399-2249
Renee.Smith@jacksonlewis.com
Morgan.Schwartz@jacksonlewis.com

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| A.M., A MINOR, BY AND THROUGH PARENTS, K.M. AND N.M., | |
| Plaintiff, | CIVIL ACTION NO. 2:23-CV-01515 |
| v. | |
| PENNSBURY SCHOOL DISTRICT, THOMAS A. SMITH, LAURIE RUFFING, ELIZABETH ALDRIDGE, and REGGIE MEADOWS, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 2

    I.    Sexual Assault and Harassment Allegations ............................................................ 2

    II.    Title IX Investigation ............................................................................................... 3

ARGUMENT ........................................................................................................................ 5

    I.    Legal Standard ......................................................................................................... 5

    II.    A.M.'s Title IX Claim Fails Because His Allegations Do Not Suggest that the District Discriminated Against Him Due to His Sex, Gender or Sexual Orientation. ...................... 6

    III.    A.M.'s Title VI Claim Fails Because the Complaint Does Not Sufficiently Allege that the District Discriminated Against Him Due to His Race. ........................................................ 9

    IV.    A.M.'s Equal Protection Claims in Counts III and IV Fail as a Matter of Law Because A.M. Has Not Pled the Existence of Purposeful Discrimination. ..................................... 11

    V.    A.M. Has Not Sufficiently Pled Due Process Claims against Defendants in Counts VI and VII of the Complaint. ........................................................................................................ 12

        A.    A.M. Fails to Allege a Constitutional Harm Upon Which His Procedural Due Process Claim Arises ................................................................................................ 12

        B.    The Complaint Makes Clear that A.M. Was Afforded Procedural Due Process by Defendants ................................................................................................................. 13

    VI.    Count VII Fails Because A.M. Has Not Sufficiently Pled that the District Deprived Him of His Due Process Under, and Equal Protection of, the Pennsylvania Constitution. ....... 15

CONCLUSION .................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**
*Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ........................................................................ 12
*Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) ................................................................................... 5
*Blunt v. Lower Merion Sch. Dist.*, 826 F. Supp. 2d 749, 758 (E.D. Pa. 2011) .............................. 9
*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ................................................ 5
*Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979) ................................................................. 6
*Cole v. Cent. Greene Sch. Dist.*, 2019 U.S. Dist. LEXIS 222382, at * 20 (W.D. Pa. Dec. 27, 2019) ............................................................................................................................................. 14
*Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) ............................................... 5
*Doe v. Princeton Univ.*, 790 Fed. Appx. 379, 383 (3d Cir. 2019) .......................................... 6, 7, 8
*Doe v. Rider Univ.*, 2018 U.S. Dist. LEXIS 7592, at *21-22 (D.N.J. Jan. 17, 2018) ............. 6, 7, 8
*Doe v. Trs. of the Univ. of Pa.*, 270 F. Supp. 3d 799, 829 (E.D. Pa. Sept. 13, 2017) ..................... 9
*Doe v. Williamsport Area Sch. Dist.*, 2023 U.S. Dist. LEXIS 73835, at *13 (M.D. Pa. Apr. 27, 2023) ............................................................................................................................................. 11
*Eklin v. Fauver*, 969 F.2d 48, 52 (3d Cir. 1992) ........................................................................... 13
*Goss v. Lopez*, 419 U.S. 565, 579 (1975) ..................................................................................... 14
*Haney v. West Chester Univ.*, 2018 U.S. Dist. LEXIS 138639, at * (E.D. Pa. Aug. 16, 2018) ... 14
*Holmes v. Gates*, 402 Fed. Appx. 670, 673-74 (3d Cir. 2019) ....................................................... 5
*Kramer v. Workers' Comp. Appeal Bd.*, 884 A.2d 518, 532 (Pa. 2005) ....................................... 15
*Marin v. Sec'y of Pa.*, 715 Fed. Appx. 139, 152 (3d Cir. 2017) .................................................. 14
*Palmer v. Merluzzi*, 868 F.2d 90, 95 (3d Cir. 1989) .................................................................... 14
*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ................................................. 5
*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002) .......................................... 5
*Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984) ................................................. 12
*S.G. v. Sayreville Bd. of Educ.*, 333 F.3d 417, 424 (3d Cir. 2003) .............................................. 14
*Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 778 (S.D. Ohio May 20, 2015) ................................ 8
*Saravanan v. Drexel Univ.*, 2017 U.S. Dist. LEXIS 193925, at *6 (E.D. Pa. Nov. 24, 2017) . 7, 10
*Schengrund v. Pa. State Univ.*, 2008 U.S. Dist. LEXIS 13716, at *13-14 (M.D. Pa. Mar. 31, 2008) ............................................................................................................................................. 15
*Spell v. Allegheny County Admin.*, 2015 U.S. Dist. LEXIS 36903, at *11 (W.D. Pa. Mar. 23, 2015) ............................................................................................................................................. 13
*Verdu v. Trs. of Princeton Univ.*, 2020 U.S. Dist. LEXIS 54293, at *10 (D.N.J. Mar. 30, 2020), *aff'd* 2022 U.S. App. LEXIS 27136 (3d Cir. 2022) ................................................................ 6, 7, 9
*Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994) ........................................................ 6, 7

**Statutes**
20 U.S.C. § 1681(a) ......................................................................................................................... 6
42 U.S.C. § 1983 ........................................................................................................................... 12

**Rules**
Fed. R. Civ. P. 12(b)(6) ................................................................................................................... 5

**Regulations**
34 C.F.R. 106.44(c) ....................................................................................................................... 15

**PRELIMINARY STATEMENT**

This matter arises out of a Title IX investigation by Defendant Pennsbury School District (the "District") into complaints of sexual assault and harassment brought by six students ("Students 1-6") against Plaintiff A.M. ("A.M."), which commenced in October 2022. *See* ECF Doc. 1, Complaint ("Compl.") at ¶ 25. The District initially suspended A.M. from school upon receiving the complaint and, after affording A.M. an opportunity to be heard on the accusations against him, the District invoked the emergency removal provision of Title IX to remove A.M. from school pending the District's final determination at the conclusion of the investigation. *See id.* ¶¶ 33-34, 41-42. While the investigation was ongoing, A.M. and his parents filed a grievance against Students 1-6 for allegedly spreading false rumors about A.M. *Id.* ¶¶ 53-54. A.M. and his parents also filed a grievance against the District's Administrator on Special Assignment, Elizabeth Aldridge ("Aldridge") following the release of Aldridge's investigation report on or about January 13, 2023, in which Aldridge credited the allegations by Students 1-6 against A.M. *See id.* ¶ 68. In the end, rather than waiting for the District's final determination as to whether A.M. could return to the District's high school, A.M.'s parents enrolled him with another local education agency in or around February 2023. *Id.* ¶ 83.

A.M., through his parents, K.M. and N.M., filed the present lawsuit against the District and Individual Defendants Aldridge, Superintendent Thomas A. Smith ("Superintendent Smith"), Title IX Coordinator Laurie Ruffing ("Ruffing"), and Principal Reggie Meadows ("Principal Meadows") in their individual capacities ("collectively, "Individual Defendants"),[1] alleging that the District's investigation and handling of A.M.'s grievances discriminated against him as a Brown, gay male in violation of Title IX and Title VI, and that Defendants deprived A.M. of equal

---

[1] The District and Individual Defendants will be collectively referred to as "Defendants."

protection and violated his due process rights by excluding him from school during the Title IX investigation. A.M.'s Complaint includes seven causes of action: Violation of Title IX against the District (Count I); Violation of Title VI against the District (Count II); Violation of the Equal Protection Clause of the Fourteenth Amendment against Defendants (Counts III and IV); Denial of Due Process in violation of the Fourteenth Amendment against Defendants (Count V and VI); and Violation of the Pennsylvania Constitution against the District (Count VII). Each claim fails as a matter of law for the reasons discussed below, and A.M.'s Complaint should be dismissed in its entirety, with prejudice, as a result.

## FACTUAL BACKGROUND[2]

### I. Sexual Assault and Harassment Allegations

A.M. was a high school student in the District. *See* Compl. ¶ 16. During A.M.'s middle school years, he became friends with Students 1-6 as they were all involved in performance arts in the District. *Id.* ¶ 17. A.M. alleges that he and Students 1-6 "frequently traded sexually explicit jokes, engaged in suggestive horseplay, and made comments about each other's appearance." *Id.* ¶ 19. However, on October 17, 2022, Students 1-6 submitted statements to the District alleging that A.M. had sexually assaulted and/or harassed them repeatedly over the course of several years. *Id.* ¶¶ 25, 27. Most recently, Students 1-6 alleged that A.M. had groped a student's breasts and buttocks in school on or about October 13, 2022. *See id.* ¶¶ 27-28.

In the Complaint, A.M. alleges that Students 1 and 2 are White and encouraged Students 3-6, who are also White, to submit sexual harassment complaints against him. *Id.* ¶¶ 22-24. A.M. further alleges that Students 1-6 complained about A.M.'s conduct to which they had "previously consented." *Id.* ¶ 26. And, although A.M. alleges that the allegations by Students 1-6 on October

---

[2] For purposes of this Motion only, Defendants assume that the allegations set forth in Plaintiff's Complaint are true and accurate.

17, 2022 "marked the first time anyone had ever made any such complaint about [him]," Plaintiff admits in the Complaint that he had previously made Students 1-6 uncomfortable by taking sexually explicit jokes too far or engaging in suggestive horseplay that exceeded their set boundaries and comfort levels. *See id.* ¶¶ 19, 21. Significantly, nowhere in the Complaint does Plaintiff deny that the underlying conduct of Students 1-6's complaints occurred.

## II. <u>Title IX Investigation</u>

Upon receiving the complaints by Students 1-6 on October 17, 2022, Defendants allegedly sent Plaintiff home and placed him on an initial three-day suspension. *Id.* ¶¶ 32-33. Defendants informed Plaintiff that an investigation was in place and the police were involved. *Id.* ¶ 32. Defendants then accorded Plaintiff a hearing pursuant to 22 Pa. Code §§ 12.6 and 12.8 and, following the hearing, Principal Meadows allegedly recommended that Defendants potentially expel A.M., with which Superintendent Smith allegedly agreed. *Id.* ¶¶ 34, 36.

Ruffing filed a formal Title IX Complaint against A.M. on October 25, 2022. *Id.* ¶ 42. Defendants notified A.M. not to engage in retaliation against Students 1-6 and, likewise, notified Students 1-6 not to engage in retaliation against A.M. *Id.* ¶ 43. Defendants then assigned Aldridge to gather statements and conduct initial interviews with Students 1-6. *Id.* ¶ 44. Thereafter, Defendants deemed A.M. to be a "danger to other students" and removed A.M. from school pending the completion of the investigation under Title IX's emergency removal provision. *See id.* ¶¶ 41, 45-46.

Over the next five weeks, Aldridge conducted formal interviews with Students 1-6 and A.M. as part of the ongoing Title IX investigation. *See id.* ¶¶ 51-52. Specifically, Defendants afforded A.M. the opportunity to share his side of the story during his interview with Aldridge on December 5, 2022. *Id.* ¶ 56. A.M., however, still could not return to school until the conclusion of

the Title IX investigation. *Id.* ¶ 57. Meanwhile, at some time while Aldridge was interviewing Students 1-6 and A.M. himself, A.M. alleges that he and his parents submitted a Title IX grievance to Defendants because he and his parents believed Students 1-6 were "spreading rumors" about A.M. and "posting false and defamatory messages on social media." *Id.* ¶ 53.

Over the next month or so, Aldridge, in conjunction with the other Individual Defendants, prepared a report based on the statements and witness interviews conducted during the investigation, which substantiated the accusations by Students 1-6 against A.M. *See id.* ¶ 60. Defendants released the 39-page report with 172 pages of exhibits drafted by Aldridge on January 13, 2023, finding, according to the Complaint, that "while [A.M.]'s evidence *did* show a pattern of behavior between [A.M.] and his now-former friend group of engaging in sexual humor, a pattern of behavior does *not* bear on the question of whether Students 1-6's interactions with [A.M.] in specific instances were consensual." *See id.* ¶ 62.

In response to the report, A.M. and his parents filed a Title IX grievance against Aldridge based on A.M.'s unsubstantiated belief that the report indicated "bias against [A.M.] as a Brown, openly gay male." *Id.* ¶ 68. Defendants deemed A.M.'s grievance against Aldridge to be an appeal of the incomplete investigation into A.M.'s conduct, and accordingly, Defendants allegedly informed A.M. on January 27, 2023 that his grievance "would not proceed" until the District entered a final determination. *Id.* ¶ 72. On February 6, 2023, Defendants notified A.M. that the District would shortly be issuing a final determination based on the Title IX investigation. *Id.* ¶ 74. In response, and prior to the District issuing the final determination, A.M.'s parents decided that A.M. could not return to the District regardless of the final determination and chose to enroll him with another local education agency. *Id.* ¶ 83. A.M. alleges that following his enrollment at another school, Defendants declared the District's Title IX investigation "in abeyance." *Id.* ¶ 84.

# ARGUMENT

I.   **Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff . . . ." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

The Third Circuit has enumerated a three-step approach in deciding a motion to dismiss. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (internal quotation marks and alterations omitted). Second, the Court must "identify allegations that 'because they are no more than conclusions, are **not entitled to the assumption of truth**.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675) (emphasis added); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of the truth.") (internal quotation marks and alterations omitted). Lastly, the Court must determine whether the well-pleaded factual allegations "plausibly give rise to an entitlement of relief." *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 679) (internal quotation marks omitted).

To survive a motion to dismiss, A.M. must plead more than an "unadorned, the defendant-unlawfully-harmed-me accusation." *See Iqbal*, 556 U.S. at 679. A.M. has not done so. Instead, A.M. has pled a Complaint that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action," which does not suffice to survive dismissal under Rule 12(b)(6). *See id.* at 678; *see also Holmes v. Gates*, 402 Fed. Appx. 670, 673-74 (3d Cir. 2019) (dismissing

the plaintiff's complaint for failure to state a claim when "she failed to marshal anything but conclusory allegations to support her claim").

## II. A.M.'s Title IX Claim Fails Because His Allegations Do Not Suggest that the District Discriminated Against Him Due to His Sex, Gender or Sexual Orientation.

Title IX bars education programs or activities that receive federal funds from discriminating against students on the basis of sex. *See* 20 U.S.C. § 1681(a); *see also Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979) (Title IX is enforceable through implied private right of action). Here, A.M. seeks to proceed with his Title IX claim against the District on two theories – "erroneous outcome" and "selective enforcement." *See Doe v. Princeton Univ.*, 790 Fed. Appx. 379, 383 (3d Cir. 2019). Specifically, A.M. alleges that the District discriminated against him because of his sex, gender, and/or sexual orientation "both in its conduct of a Title IX investigation directed at him and in its refusals to conduct Title IX investigations based on his grievances." Compl. ¶ 90. A.M. has not sufficiently pled a Title IX claim under either theory.

To successfully state an erroneous outcome theory of liability under Title IX, A.M. must sufficiently plead (1) "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding," and (2) "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Verdu v. Trs. of Princeton Univ.*, 2020 U.S. Dist. LEXIS 54293, at *10 (D.N.J. Mar. 30, 2020), *aff'd* 2022 U.S. App. LEXIS 27136 (3d Cir. 2022) (citing *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994)). On the other hand, to successfully plead a "selective enforcement" claim, A.M. must allege facts demonstrating that a heterosexual female "was in circumstances sufficiently similar to his own and was treated more favorably" by the District. *Doe v. Rider Univ.*, 2018 U.S. Dist. LEXIS 7592, at *21-22 (D.N.J. Jan. 17, 2018); *see also Verdu*, 2020 U.S. Dist. LEXIS 54293 at *20-21 ("To consider a student similarly situated, 'the individuals with whom a plaintiff seeks to be compared

must have engaged in the ***same conduct without such differentiating or mitigating circumstances*** that would distinguish their conduct or the school's treatment of them for it.'") (quoting *Saravanan v. Drexel Univ.*, 2017 U.S. Dist. LEXIS 193925, at *6 (E.D. Pa. Nov. 24, 2017)) (emphasis added).

Under both theories, A.M. must allege that "the complained of conduct was motivated by gender bias" to survive a motion to dismiss. *Rider Univ.*, 2018 U.S. Dist. LEXIS 7592 at *21; *see also Princeton Univ.*, 790 Fed. Appx. at 383 ("Each [theory] require[s] him to allege that he faced disparate treatment 'on the basis of sex.'") (quoting 20 U.S.C. § 1681(a)). A.M. must plead allegations that go "well beyond the surmises of the plaintiff as to what was in the minds of others and involve ***provable events*** that in the aggregate would allow a trier of fact to find that gender affected the outcome of the disciplinary proceeding.'" *Verdu*, 2020 U.S. Dist. LEXIS 54293 at *11 (quoting *Yusuf*, 35 F.3d at 716) (internal quotations marks omitted) (emphasis added). Such provable events may include "statements by members of the disciplinary tribunal, statements by pertinent [district] officials, or patterns of decision-making that also tend to show the influence of gender." *Id.* (citing *Yusuf*, 35 F.3d at 716).

In this case, A.M. alleges that the District discriminated against him "by conducting a purported Title IX investigation against him that was tainted by the anti-bigotry of its agent, Defendant Aldridge." *See* Compl. ¶ 91. However, the Complaint is devoid of any facts that suggest the District's conduct and/or Aldridge's investigation was in any way motivated by bias based on A.M.'s sex, gender, and/or sexual orientation. A.M. has not alleged that Aldridge or any of the Individual Defendants made any statements indicating such bias, nor has he alleged any facts from which a pattern of decision-making influenced by bias can be inferred. Rather, A.M. makes conclusory and unsupported allegations that Aldridge's "findings of fact and credibility determinations . . . were based on negative stereotypes of gay males," because the District, through

7

Aldridge, allegedly "chose to treat the sexual jokes and horseplay of the heterosexual girls among Students 1-6 as normal, natural, defensible, and not evidence of an immutable pattern of behavior while treating the sexual jokes and horseplay of A.M., a gay male, as abnormal, unnatural, inherently harmful, and evidence of an immutable pattern of behavior." *Id.* ¶¶ 92-93. However, courts have made clear that "allegations of bias against the alleged perpetrator in favor of the victim ***is insufficient*** to show an inference of gender bias." *Rider Univ.*, 2018 U.S. Dist. LEXIS 7592 at *26-27; *see also Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 778 (S.D. Ohio May 20, 2015) ("Demonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students.").

Further, A.M. has also failed to plead other circumstances demonstrating that the District made decisions influenced by sex, gender and/or sexual orientation bias. Instead, A.M. makes additional conclusory and unsupported allegations that the District treated him "differently and worse" than it treated Aldridge and Students 1, 3, 4, 5 and 6 by taking no action against them in response to A.M.'s grievances because it "believes that heterosexual females are more entitled to legal protection than homosexual males." *See* Compl. ¶¶ 94-99. Notably, however, "specific allegations of procedurally flawed proceedings coupled with conclusory allegations of gender discrimination are ***not sufficient to survive a motion to dismiss***." *E.g.*, *Rider Univ.*, 2018 U.S. Dist. LEXIS 7592 at *21 (emphasis added); *Princeton Univ.*, 790 Fed. Appx. at 383 (holding plaintiff's allegations that he "would not have been subject to Princeton's discriminatory acts if he were a female victim" and that "Princeton also does not believe male students can be victims" are "too 'generalized' and 'conclusory' to raise an inference of disparate treatment").

Nonetheless, even if A.M. sufficiently pled the existence of bias based on gender, sex and/or sexual orientation (which he did not), A.M.'s claim under the erroneous outcome theory still fails simply because he has not sufficiently alleged his innocence. *See Verdu*, 2020 U.S. Dist. LEXIS 54293 at *17 (concluding plaintiff failed to plead a Title IX claim based on erroneous outcome when he failed to allege any facts that affirmatively showed he was innocent). In fact, A.M.'s Complaint supports the opposite inference: that A.M. did make the sexual jokes and engage in the horseplay underlying the complaints by Students 1-6. *See* Compl. ¶ 23. And lastly, A.M.'s claim under the selective enforcement theory also fails as a matter of law for the sole reason that the Complaint does not identify any heterosexual female who was accused of engaging in many years of sexual assault and/or sexual harassment against other students, and who received different treatment by the District. *See generally* Compl.

For all of these reasons, the Complaint fails to allege a Title IX claim under both the erroneous outcome and selective enforcement theories. Count I should, therefore, be dismissed .

### III.     **A.M.'s Title VI Claim Fails Because the Complaint Does Not Sufficiently Allege that the District Discriminated Against Him Due to His Race.**

A.M.'s Title VI claim against the District should be dismissed for the same reason his Title IX claim should be dismissed as a matter of law. Namely, without any factual support, A.M. alleges that the District discriminated against him based on his race in violation of Title VI. To state a cognizable claim under Title VI, A.M. must allege that "(1) he is a member of a protected class; (2) he was 'qualified to continue in pursuit of [his] education'; (3) he 'suffered an adverse action'; and (4) the adverse action 'occurred under circumstances giving rise to an inference of discrimination.'" *Doe v. Trs. of the Univ. of Pa.*, 270 F. Supp. 3d 799, 829 (E.D. Pa. Sept. 13, 2017) (quoting *Blunt v. Lower Merion Sch. Dist.*, 826 F. Supp. 2d 749, 758 (E.D. Pa. 2011)) (alterations in original). To survive a motion to dismiss, A.M. must plead facts alleging

"intentional discrimination," by alleging facts from which "either discriminatory animus or deliberate indifference" can be inferred. *Id.*

A.M. has not sufficiently pled facts to give rise to a plausible claim of race discrimination against the District under Title VI. A.M. merely repeats his allegations underlying his Title IX claim in support of his claim under Title VI, switching out the words "sex, gender, and sexual orientation" with "race and color", and substituting the phrase "gay male" with "Brown male." *See* Compl. ¶¶ 105-116. Indeed, A.M. does not allege any facts from which it can be inferred that the District's treatment of him during the Title IX investigation was in any way based on his race. *See generally id.* Rather, A.M. again repeatedly and conclusively alleges in the Complaint that the District treated him "differently and worse" as a "Brown, cisgendered homosexual male" than "White, cisgendered heterosexual females," but does not plead the context of that treatment or any facts showing ***how*** the District's conduct against him could give rise to an inference of discrimination. *Id.* ¶ 109. A.M.'s blanket statement that the District had "negative stereotypes of Brown males" and "believes that White females are more entitled to legal protection than brown skinned males," is conclusive and does not plausibly suggest that the District discriminated against him based on his race in conducting the Title IX investigation. *See Saravanan*, 2017 U.S. Dist. LEXIS 193925 at *23 ("[Plaintiff's] blanket claim that 'schools in the US such as Drexel have a pattern of intentional discrimination against male students of color like [Plaintiff] by applying harsher discipline to them than to their white comparators' is conclusive and does not indicate Drexel discriminated against him on the basis of his race in his disciplinary proceeding."). And, A.M. cannot sufficiently plead a claim under Title VI by merely alleging that he is of a different race than Students 1-6 and Aldridge. *Id.* ("We have no fact evidencing intent to harm [the plaintiff] in the disciplinary process because he is of a different race than his [accuser] or the Drexel

investigators. He fails to plead a claim under Title VI."). Thus, Count II of the Complaint fails to state a claim as a matter of law and should be dismissed.

**IV.    A.M.'s Equal Protection Claims in Counts III and IV Fail as a Matter of Law Because A.M. Has Not Pled the Existence of Purposeful Discrimination.**

A.M. also asserts claims against Defendants for allegedly violating his Fourteenth Amendment right to equal protection. *See* Compl. ¶¶ 118-128. However, A.M. fails to plausibly allege equal protection claims against Defendants for the same reasons the Complaint fails to state claims against the District under Title IX and Title VI. To sufficiently plead a claim for denial of equal protection, A.M. must prove the existence of purposeful discrimination by alleging that he received "different treatment from that received by other individuals similarly situated." *Doe v. Williamsport Area Sch. Dist.*, 2023 U.S. Dist. LEXIS 73835, at *13 (M.D. Pa. Apr. 27, 2023). As previously discussed, A.M. has not done so.

Specifically, in Counts III and IV, A.M. alleges that the District and Individual Defendants "chose to treat Plaintiff as less worthy of his due process rights and the protections accorded by Title IX than his White, heterosexual, female peers, and Defendant Aldridge, a White, heterosexual woman." *See* Compl. ¶¶ 120, 127. Notwithstanding the fact that these conclusory and unsupported allegations by A.M. are insufficient to survive a motion to dismiss, "an essential element of a claim of selective treatment under the Equal Protection Clause is that the comparable parties were similarly situated – which means they are alike in all relevant aspects." *Williamsport Area Sch. Dist.*, 2023 U.S. Dist. LEXIS 74835 at *14 (internal quotation marks and citations omitted). The Complaint makes clear that A.M. is not similarly situated to Students 1-6 in any relevant aspect. A.M. was accused of subjecting Students 1-6 to sexual assault and sexual harassment over the course of several years. *See* Compl. ¶¶ 27-28. On the other hand, A.M. alleges that Students 1-6 spread rumors about A.M. that resulted in A.M.'s peers allegedly posting "false and defamatory

messages on social media." *Id.* ¶ 54. The only similarity between A.M. and Students 1-6 is their common attendance at school in the District and involvement in the performance arts, which are not relevant to the claims at issue here. Moreover, Aldridge – the Administrator who gathered statements and conducted interviews as part of the Title IX investigation – cannot be seen as similarly situated to A.M. in any way.

For these reasons, A.M. cannot sufficiently plead equal protection claims against Defendants, and Counts III and IV should be dismissed with prejudice.

V. **A.M. Has Not Sufficiently Pled Due Process Claims against Defendants in Counts VI and VII of the Complaint.**

In Counts VI and VII, A.M. asserts claims against both the District and Individual Defendants under 42 U.S.C. § 1983 ("Section 1983"), alleging that Defendants violated the Fourteenth Amendment by denying him procedural due process in failing to adhere to Pennsylvania School Code, 22 Pa. Code § 12.6 and 12.8. *See* Compl. ¶¶ 136, 144. The Due Process Clause of the Fourteenth Amendment declares that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. When a plaintiff asserts a due process claim for a "state actor's failure to provide procedural due process," as is alleged here, courts conduct the "familiar two-stage analysis," assessing "(1) whether 'the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property'; and (2) whether the procedures available provided the plaintiff with 'due process of law.'" *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (quoting *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984)).

A. **A.M. Fails to Allege a Constitutional Harm Upon Which His Procedural Due Process Claim Arises.**

As an initial matter, A.M. fails to satisfy the first element of his procedural due process claim because he does not sufficiently allege that his entitlement to a public education was

infringed upon in violation of the Fourteenth Amendment. "In order to state a viable claim under Section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States." *Spell v. Allegheny County Admin.*, 2015 U.S. Dist. LEXIS 36903, at *11 (W.D. Pa. Mar. 23, 2015) (internal quotation marks and citations omitted). Significantly, "[a] violation of state law, however, . . . cannot form the basis of a Section 1983 claim." *Id.* (citing *Eklin v. Fauver*, 969 F.2d 48, 52 (3d Cir. 1992)). Here, A.M. cites to 22 Pa. Code § 12.8 in the Complaint, alleging that "education is a statutory right, and students shall be afforded due process if they are to be excluded from school," and alleges that Defendant violated their obligations under 22 Pa. Code § 12.6 and 12.8 by excluding him from school without a formal expulsion hearing. *See* Compl. ¶¶ 131-144. A.M. does not plead any facts alleging that Defendants violated any of his rights "created by the United States Constitution or federal law," as is necessary to allege a due process claim in violation of the Fourteenth Amendment under Section 1983. *Spell*, 2015 U.S. Dist. LEXIS 36903 at *9 ("Section 1983 does not create rights. Rather, it provides a remedy for violation of those rights created by the United States Constitution or federal law."). For this reason, alone, A.M. fails to state a due process claim under the Fourteenth Amendment against Defendants, and Counts V and VI should be dismissed.

### B. The Complaint Makes Clear that A.M. Was Afforded Procedural Due Process by Defendants.

Even if A.M. sufficiently alleged an individual interest protected by the Fourteenth Amendment (which he did not), the Complaint demonstrates that Defendants provided A.M. with adequate procedural due process with regard to his suspension, and appropriately followed the emergency removal provision of Title IX in effectuating his expulsion. "Procedural due process generally requires that the deprivation of a protected interest 'be preceded by notice and opportunity for hearing ***appropriate to the nature of the case***.'" *Marin v. Sec'y of Pa.*, 715 Fed.

Appx. 139, 152 (3d Cir. 2017) (quoting *Goss v. Lopez*, 419 U.S. 565, 579 (1975)) (emphasis added). Specifically, the *Goss* Court explained that due process requires "a student facing a suspension of ten days or less be given oral or written notice of the charges against him or her and a student who denies the charges must be given an explanation of the evidence the authorities have and an opportunity to present his or her side of the story." *S.G. v. Sayreville Bd. of Educ.*, 333 F.3d 417, 424 (3d Cir. 2003) (applying the due process requirements outlined in *Goss*). Moreover, the Third Circuit has held that discipline greater than the ten-day or less suspension discussed in *Goss* "[does] not necessarily warrant additional procedures." *Cole v. Cent. Greene Sch. Dist.*, 2019 U.S. Dist. LEXIS 222382, at * 20 (W.D. Pa. Dec. 27, 2019) (alteration in original); *see also Haney v. West Chester Univ.*, 2018 U.S. Dist. LEXIS 138639, at * (E.D. Pa. Aug. 16, 2018) ("This Court gathers from the above that long-term suspension or expulsion procedures must provide an accused student with notice and an opportunity to be heard in his defense and a greater deprivation ***might not warrant*** a higher level of due process than in *Goss*.") (emphasis added). Therefore, the Third Circuit has explained that "[d]ue process is a flexible concept and the process due in any situation is to be determined by weighing (1) the private interests at stake, (2) the governmental interests at stake, and (3) the fairness and reliability of the existing procedures and the probable value, if any, of additional procedural safeguards." *Palmer v. Merluzzi*, 868 F.2d 90, 95 (3d Cir. 1989).

Here, the Complaint makes clear that A.M. was accorded the process required by *Goss*. A.M. alleges that he was given notice on October 17, 2022 when he was removed from gym class that "there was an investigation" and "that police were involved." *See* Compl. ¶ 32. The District initially placed A.M. on a three-day suspension, and then Defendants accorded A.M. an informal hearing as required by 22 Pa. Code §§ 12.6 and 12.8. *Id.* ¶ 32. Over the next week following his informal hearing, Defendants determined that the circumstances of the accusations against A.M.

14

warranted emergency removal under Title IX, thus eliminating any obligation to conduct a formal expulsion hearing within 15 school days.[3] *See id.* ¶ 41. A.M. further alleges that Ruffing filed the formal Title IX complaint against him on October 25, 2022, and Defendants immediately commenced the Title IX investigation into the allegations of sexual assault and sexual harassment against A.M. *See id.* ¶ 44. Accordingly, the Complaint makes clear that A.M. was afforded sufficient due process for his suspension under *Goss*, and the emergency removal provision of Title IX eliminated the need for Defendants to provide him any additional procedures under the Fourteenth Amendment. Thus, for this reason too, A.M. fails to state viable procedural due process claims against Defendants, and Count V and VI should be dismissed.

VI. **Count VII Fails Because A.M. Has Not Sufficiently Pled that the District Deprived Him of His Due Process Under, and Equal Protection of, the Pennsylvania Constitution.**

Lastly, A.M.'s claim against the District for violation of the Pennsylvania Constitution should be dismissed as a matter of law for the same reasons underlying the dismissal of Counts III, IV, V, and VI. First, as to A.M.'s equal protection claim, A.M. has failed to allege that the District treated him differently than similarly situated individuals on account of his sex, gender and/or sexual orientation or his race and/or color, as previously discussed in detail above. *See Kramer v. Workers' Comp. Appeal Bd.*, 884 A.2d 518, 532 (Pa. 2005) ("In evaluating equal protection claims under the Pennsylvania Constitution, this Court has employed the same standards applicable to federal equal protection claims."). Second, the Complaint makes clear that the

---

[3] Under Title IX's emergency removal provision, the District may "remov[e] a respondent from the [district's] education program or activity on an emergency basis, provided that the [district] undertakes an individualized safety and risk analysis, determines that an immediate threat to the physical health or safety of any student or other individual arising from the allegations of sexual harassment justifies removal and provides the respondent with notice and an opportunity to challenge the decision immediately following the removal." 34 C.F.R. 106.44(c). Whether Defendants followed the appropriate procedure under Title IX's emergency removal provision is a question of statutory law under Title IX rather than a constitutional question under the Fourteenth Amendment. *See Schengrund v. Pa. State Univ.*, 2008 U.S. Dist. LEXIS 13716, at *13-14 (M.D. Pa. Mar. 31, 2008) ("[S]ection 1983 cannot be used to remedy substantive rights that may be directly remedied under Title IX.").

District accorded A.M. due process and followed the requirements of 22 Pa. Code § 12.8 with regard to A.M.'s suspension, as A.M. affirmatively asserts that the District "accorded [A.M.] his informal hearing" and "respect[ed] [A.M.]'s rights to due process and equal protection of the laws." *See* Compl. ¶ 34. Lastly, as discussed above, A.M.'s allegation that the District did not follow the proper procedures in invoking the emergency removal provision of Title IX does not fall within the bounds of a claim for violation of the Pennsylvania Constitution.

## CONCLUSION

A.M.'s Complaint contains nothing more than conclusory and unsupported allegations, which are insufficient to survive a motion to dismiss. For all of these reasons, Defendants respectfully request that the Court grant its motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) and dismiss the Complaint in its entirety with prejudice.

Respectfully submitted,

**JACKSON LEWIS P.C.**

*/s/ Renee N. Smith*
Renee N. Smith (PA # 65866)
Morgan D. Schwartz (PA # 328938)
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
renee.smith@jacksonlewis.com
morgan.schwartz@jacksonlewis.com

*Attorneys for Defendants*

Dated: June 30, 2023

4879-3027-2108, v. 1